UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STACY STRICKLIN,

                Petitioner,

                                          **MEMORANDUM & ORDER**
     v.                                       20-CV-1918 (RPK)

SUPERINTENDENT M. CAPRA,

                Respondent.
-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

       Petitioner Stacy Stricklin is serving a state prison sentence after being convicted of second-degree murder in New York. The state appellate court affirmed his conviction on direct appeal, and the state trial court denied his motion to vacate the conviction under N.Y. Crim. Proc. Law § 440.10. Petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2254, raising six claims: (1) that he was deprived effective assistance of counsel; (2) that the admission of certain testimonial statements violated the Confrontation Clause and state hearsay rules; (3) that prosecutorial misconduct deprived him of a fair trial; (4) that the prosecution withheld material it was required to disclose under *People v. Rosario*, 9 N.Y.2d 286 (1961); (5) that the trial court improperly modified a pretrial ruling under *People v. Sandoval*, 34 N.Y.2d 371 (1974); and (6) that he was deprived of his right to a preliminary hearing under N.Y. Crim. Proc. Law § 180.10. For the reasons explained below, the petition is denied.

## BACKGROUND

       The following facts are taken from the state court record, viewed in the light most favorable to the prosecution. *See McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In February 2010, petitioner attended a birthday party with his girlfriend Michelle Fernandez. R. 211, 479–81.[1] Petitioner consumed alcohol and cocaine at the party. *Id.* at 213–16, 229, 233–36, 240, 481. At some point, Fernandez left the party, spent time with a friend, and returned home. *Id.* at 219–20, 236, 414, 482–83. Several hours later, petitioner went to Fernandez's apartment, entered the bedroom where Fernandez was sleeping, beat her, bit her, and asphyxiated her, resulting in Fernandez's death. *Id.* at 313, 347–51, 375–83, 436, 454–62.

Petitioner was charged with second-degree murder. In a voluntary disclosure form prepared in April 2010, the prosecution noted that it possessed certain tapes or other electronic recordings that it intended to introduce at trial, which were available for the defense counsel's review. *Id.* at 683. Meanwhile, defense counsel hired a psychiatric expert and began developing evidence to support an intoxication defense. *Id*. at 17, 680.

In April 2013, after consulting with counsel, petitioner rejected a plea offer from the prosecution and waived his right to a jury trial. *Id.* at 4–9, 22.

Several days later, the state court held a suppression hearing, during which the parties and court discussed various evidentiary matters. *Id.* at 11–61. First, as relevant to the present petition, the prosecution noted that it had provided the defense with a surveillance video from Fernandez's apartment building—where Fernandez was killed—which showed petitioner "walking down a few hallways." *Id.* at 14. Defense counsel informed the court that he had received the tape but was unable to view it, and he requested an opportunity to do so with the prosecution's equipment. *Id.* at 13–16. Defense counsel and petitioner successfully viewed the surveillance video during a lunch recess in the middle of the suppression hearing, before trial began. *Id.* at 32–33. Second, the prosecution asked the court for permission to put on the stand a witness who would testify to

---

[1] R. refers to the state court record (Dkt. #8). Page numbers correspond to the PDF pagination.

threatening statements made by petitioner and a prior violent incident between petitioner and Fernandez. *Id.* 15–18, 681–82. The court determined it would allow the testimony to come into evidence. *Id.* at 18. Third, the prosecution applied, pursuant to *People v. Sandoval*, 34 N.Y.2d 371, 374 (1974), for permission to introduce evidence of petitioner's prior criminal convictions, should petitioner take the stand in his own defense. R. 18–20. The court denied the request. *Id.* at 20.

Trial began immediately following the suppression hearing. At trial, Fernandez's friend testified that in the hours before Fernandez died, petitioner became angry and threatened to kill Fernandez. *Id.* at 411. Fernandez's neighbor testified that he entered Fernandez's bedroom on the night of her death—having been summoned by Fernandez's mother for help—and witnessed petitioner sitting on top of the bed with blood on his face. *Id.* at 345–50. Moreover, forensic experts testified that the bite marks on Fernandez matched petitioner's dental impressions. *Id.* at 472–74, 1193.

The defense, in turn, introduced evidence to support an intoxication defense. Defense counsel presented testimony from petitioner's family members and friends as to petitioner's intoxicated state on that evening. *Id.* at 180–257, 316–32, 475–501. Among other witnesses, petitioner's friend Charles Gallspie testified about events at the birthday party that petitioner attended with Fernandez on the night Fernandez was killed. On cross-examination, Charles testified that he did not remember various things the prosecution was asking him about. Over defense counsel's objection, the trial court permitted the prosecution to try to refresh Charles's memory with out-of-court statements made to the police by his brother Teddy Gallspie, who also attended the party and who did not testify at trial. *See id.* at 248–51.

3

The defense also presented testimony from defense expert Dr. Gulrajani, who opined that petitioner had been too intoxicated to form the requisite intent to murder Fernandez. *Id.* at 510–57. On cross-examination, Dr. Gulrajani admitted that he had not viewed the surveillance video that depicted petitioner walking down hallways in Fernandez's apartment building on the night of her death. *Id.* at 550. The prosecution also asked Dr. Gulrajani whether his opinion regarding some of petitioner's representations would change if he learned petitioner had been convicted of biting another woman in the past. *Id.* at 539. The prosecution then sought to introduce evidence of one of petitioner's prior convictions, which elicited an objection from defense counsel that the record was being offered to show petitioner's propensity to bite people. *Id.* at 540. The court allowed the criminal record into evidence for the limited purpose of seeing whether it affected Dr. Gulrajani's opinion. *Ibid.*

At the conclusion of trial, petitioner was convicted of second-degree murder. *Id.* at 651. The court sentenced petitioner to a prison term of 25 years to life. *Id.* at 672.

Petitioner appealed, raising several arguments. First, petitioner argued through appellate counsel that he received ineffective assistance of counsel because his trial counsel failed to investigate the surveillance video used to rebut the intoxication defense, and because his trial counsel advised him on waiving his right to a jury and rejecting the prosecution's plea offer before counsel watched the video. *Id.* at 700–13. Second, petitioner argued through appellate counsel that he was denied his right to confront witnesses when the prosecution introduced statements made by Teddy Gallspie, a non-testifying witness. *Id.* at 714–17. Finally, petitioner argued in a supplemental *pro se* brief that he was denied his due process right to a fair trial because of prosecutorial misconduct, the prosecution's failure to turn over *Rosario* materials, and the trial court's reversal of its pretrial *Sandoval* ruling. *Id.* at 788–821.

The Appellate Division affirmed petitioner's conviction. *People v. Stricklin*, 152 A.D.3d 549 (N.Y. App. Div. 2017). First, the court held that it was not evident from the record that petitioner was deprived of effective assistance of counsel. The court advised that the appropriate procedure for raising a claim that implicated matters both on and outside the record would be to collaterally attack the conviction in a motion to vacate under N.Y. Crim. Proc. Law § 440.10. *Id.* at 549. Second, the court held that the arguments regarding a Confrontation Clause violation, prosecutorial misconduct, and a *Rosario* violation were unpreserved for appellate review, and in any event, without merit. *Id.* at 550. Finally, the court determined that the trial court properly allowed one of petitioner's prior convictions into evidence because it contradicted the self-reported criminal history upon which Dr. Gulrajani partially relied in forming an opinion. To the extent petitioner argued that the prosecution's cross-examination of Dr. Gulrajani exceeded the bounds of the trial court's *Sandoval* ruling, the court found that defense counsel failed to raise that specific objection at trial and any error would have been harmless. *Ibid*. The New York Court of Appeals denied petitioner leave to appeal the Appellate Division's decision. *People v. Stricklin*, 30 N.Y.3d 954 (2017).

Petitioner then moved to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10. In addition to asserting an ineffective-assistance claim, petitioner argued that he was denied the right to a preliminary hearing under N.Y. Crim. Proc. Law § 180.10. *See* R. 869–920. The state court denied petitioner's motion. *See id.* at 1173–80. The court found that petitioner was not deprived of effective assistance, reasoning that trial counsel's failure to review the surveillance video further in advance of trial or to ensure Dr. Gulrajani watched the video did not deprive petitioner of a fair trial because the video did not render his intoxication defense untenable. *Id.* at 1176–80. The court also found the record devoid of any indication that trial counsel provided

5

ineffective assistance by advising petitioner on his jury-trial rights and the plea offer before reviewing the video. *Id.* at 1179–80. As to petitioner's claim that he was denied his right to a preliminary hearing, the court held that the claim was procedurally barred and without merit. *Id.* at 1175–76. The Appellate Division denied petitioner leave to appeal the decision. *Id.* at 1199.

Petitioner timely sought a writ of habeas corpus under 28 U.S.C. § 2254. He raises six claims. *First*, petitioner contends that he was deprived effective assistance of counsel due to his trial counsel's delay in reviewing the surveillance video. Pet. 40–53 (Dkt. #1); R. 700–13. *Second*, petitioner argues that the prosecution's questioning of a defense witness about statements made to the police by a non-testifying witness violated petitioner's rights under the Confrontation Clause of the Sixth Amendment and state hearsay rules. Pet. 54–57; R. 714–17. *Third*, petitioner claims that prosecutorial misconduct deprived him of his due process right to a fair trial. Pet. 68–78; R. 796–605. *Fourth*, petitioner argues that the prosecution withheld certain material it was required to disclose under *People v. Rosario*, 9 N.Y.2d 286 (1961). Pet. 78–84; R. 805–11. *Fifth*, petitioner contends that the trial court improperly modified its pretrial ruling under *People v. Sandoval*, 34 N.Y.2d 371 (1974). Pet. 85–93; R. 812–20. *Sixth*, petitioner claims that he was deprived of his right to a preliminary hearing under N.Y. Crim. Proc. Law § 180.10. Pet. 143–50; R. 910–17.

## STANDARD OF REVIEW

A person in custody pursuant to a state-court judgment may seek a writ of habeas corpus on the ground that he is being held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under Section 2254, subject to exceptions not applicable here, a federal court may review a petitioner's claims only if the applicant has exhausted the remedies available to him in the courts of his state. *Id.* § 2254(b)(1)(A). "State remedies are deemed

exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court . . . and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Att'y Gen. of State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Picard v. Connor*, 404 U.S. 270, 276–77 (1971)).

Federal review of state convictions is circumscribed by the related doctrine of procedural default. "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)) (emphasis omitted). "Out of respect for finality, comity, and the orderly administration of justice," federal courts generally may not entertain such defaulted claims through habeas unless the petitioner shows "cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). A state prisoner who fails to make those showings can only receive habeas review if he "advance[s] . . . a credible and compelling claim of actual innocence," *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (quoting *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012)), such that "failure to consider the claim[] will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750.

AEDPA also constrains federal review of claims that have been preserved. So long as a state court adjudicated a litigant's claim on the merits, a federal court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

7

"Clearly established Federal law" refers to "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (alterations omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision involves an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case," *ibid.*, meaning there is "no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  Finally, a determination that a state-court decision was "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), requires more than that a federal court conducting habeas review "would have reached a different conclusion in the first instance," *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quotation marks omitted) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "If the state record is 'ambiguous' such that two different views of the facts find fair support in the record," AEDPA "mandates deference to the state court's fact-finding." *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir. 2001) (citation omitted).

These standards are "intentionally difficult to meet," *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation and quotation marks omitted), because federal habeas review is "a 'guard against extreme malfunctions in the state criminal justice systems,'" not "a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 43 (2011) (quoting *Richter*, 562 U.S. at 102–03).

**DISCUSSION**

Petitioner has not demonstrated an entitlement to relief on any of his habeas claims. The majority of his claims are procedurally barred, and the claims regarding ineffective assistance of counsel and the trial court's *Sandoval* ruling lack merit. Accordingly, the petition is denied.

## I. Ineffective Assistance of Counsel

Petitioner raises two sets of ineffective-assistance-of-counsel arguments, both stemming from trial counsel's delay in reviewing the surveillance video that depicted petitioner walking in Fernandez's apartment building immediately before and after Fernandez's death. First, petitioner alleges that he received ineffective assistance because trial counsel failed to timely investigate the video and ensure Dr. Gulrajani viewed the video prior to trial. *See* R. 700–11. Second, petitioner alleges that he received ineffective assistance because trial counsel advised him on whether to waive his right to a jury trial and whether to accept the prosecution's plea offer before reviewing the video. *Id.* at 711–13. In denying petitioner's motion to vacate, the state trial court considered and rejected both claims. *Id.* at 1176–80. Petitioner fails to demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established federal law.

To establish a claim of ineffective assistance of counsel under the Sixth Amendment, petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The review of an attorney's performance, already "highly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted), becomes "doubly" so on habeas review when "a state court has [already] decided that counsel performed adequately," *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (per curiam) (citation omitted). In this context, a petitioner

9

must not only satisfy *Strickland*'s requirements, *Knowles*, 556 U.S. at 124, but also show that the state court's ruling was unreasonable, *id*. at 123.

Here, petitioner's first ineffective-assistance claim—based on his trial counsel's failure to timely investigate the video and ensure Dr. Gulrajani watched the video—fails both prongs of the *Strickland* test. To begin, petitioner has not demonstrated that defense counsel's actions fell below an objective standard of reasonableness. Defense counsel reviewed the video prior to the start of trial and could have easily requested an adjournment to reconsider trial strategy. *See* R. 1179 n.1. Defense counsel's decision not to change his strategy of pressing an intoxication defense was reasonable given the available evidence of petitioner's intoxication, which the surveillance video did not completely undermine. As the state court noted in denying petitioner's motion to vacate, although the video depicted petitioner "exhibiting relative coordination and balance," it also captured him "swaying slightly and leaning against the walls as he walked through the hallways and staircases, which defense counsel argued was indicia of [petitioner's] impaired motor skills." *Id.* at 1178–79. Indeed, though the court ultimately convicted petitioner of second-degree murder, it concluded there was sufficient evidence to support giving a charge on the intoxication defense. *Id*. at 1174.

Moreover, given that the surveillance video did not disprove the intoxication defense and that trial counsel could have requested to adjourn trial after viewing the video, petitioner also cannot demonstrate a reasonable probability that the result of his trial would have been different but for his counsel's failure to earlier investigate the video. Petitioner contends that he suffered prejudice because the prosecution showed Dr. Gulrajani the video on cross-examination, and after viewing it, Dr. Gulrajani retracted his statements as to petitioner's state of intoxication. *See* Pet'r's Reply Br. 5 (Dkt. #11). However, Dr. Gulrajani does not in fact appear to have issued such a

retraction.  Dr. Gulrajani testified on cross-examination that if someone is intoxicated to the level of having a blackout, his state is "characterized by poor coordination, judgment errors, mood liability, deterioration of cognition and slurring of speech."  R. 546.  For example, individuals will experience "difficulty walking a straight line," *id.* at 548, and cannot "repeat the alphabet backwards," *id.* at 549.  However, he testified, "that doesn't mean that they won't be able to say their alphabet forward" or "that they won't be able to walk at all."  *Id.* at 549.  Dr. Gulrajani noted that he had "seen quite a few drunk people get back home safely."  *Id.* at 548.  The prosecution asked Dr. Gulrajani whether, "[i]f you saw someone on a video tape," "it would be pretty clear if they had the things you talked about," including "poor coordination, judgment errors, mood liability, deterioration and cognition."  *Id.* at 549–50.  Dr. Gulrajani answered yes.  *Id.* at 550.  Dr. Gulrajani further testified that he was "aware that there is a tape" that depicted petitioner walking in Fernandez's apartment building on the night of Fernandez's death, but that he had not viewed the video because he "wasn't able to run it."  *Ibid.*  During this exchange, Dr. Gulrajani did not retract his statements regarding petitioner's intoxication based on the video.

Petitioner's second ineffective-assistance claim—based on counsel's failure to watch the surveillance video before advising petitioner on the prosecution's plea offer and waiver of his jury-trial right—fares no better.  Even assuming this claim is exhausted, petitioner has not demonstrated an entitlement to relief, because there is no indication in the record that had trial counsel reviewed the surveillance video earlier, he would have given petitioner different advice on whether to accept the prosecution's plea offer and whether to waive his right to a jury trial.

As such, the state court's rejection of petitioner's ineffective-assistance claims was not contrary to or an unreasonable application of clearly established federal law.

11

**II.     *Sandoval* Ruling**

In addition, petitioner argues that the trial court improperly modified its pretrial ruling under *People v. Sandoval*, 34 N.Y.2d 371 (1974), by permitting the prosecution to introduce one of petitioner's prior criminal convictions into evidence. Pet. 85–93. The Appellate Division considered and rejected that claim. *Stricklin*, 152 A.D.3d at 550. Petitioner fails to demonstrate that the Appellate Division's decision was contrary to or an unreasonable application of clearly established federal law.

"[A] claim that the trial court erred in its *Sandoval* ruling brings up a matter of state law . . . not subject to habeas review unless the petitioner can show that the erroneous evidentiary ruling was so pervasive as to have denied him a fundamentally fair trial, or so extremely unfair that its admission violates fundamental conceptions of justice." *Lewis v. New York*, No. 14-CV-3906, 2017 WL 5591624, at *8 (E.D.N.Y. Nov. 17, 2017) (citation and quotation marks omitted); *see Smith v. Greiner*, 117 F. App'x 779, 781 (2d Cir. 2004) (same). "The Court evaluates whether 'the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Smith*, 117 F. App'x at 781 (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)).

Here, the admission of petitioner's prior conviction does not meet that standard. As the Appellate Division explained, the trial court permitted the admission of the prior conviction "for the limited purpose of determining whether that conviction affected [Dr. Gulrajani's] opinion," given that the conviction "contradicted [petitioner's] self-reported legal history, upon which [Dr. Gulrajani] partly relied in formulating his opinion." *Stricklin*, 152 A.D.3d at 550. And considering the "overwhelming evidence" presented at trial supporting the prosecution's case, R. 1178, the

12

admission of petitioner's prior conviction did not supply the basis for conviction. Therefore, the Appellate Division's determination that the trial court properly admitted evidence of the prior conviction was not contrary to or an unreasonable application of federal law.

To the extent petitioner separately argues that the prosecution's questioning of Dr. Gulrajani exceeded the bounds of the court's *Sandoval* ruling, the Appellate Division determined that argument was unpreserved for appellate review. *See Stricklin*, 152 A.D.3d at 550. Therefore, the argument is procedurally barred for the same reasons explained below that his other unpreserved claims are barred.

### III. Petitioner's Remaining Claims Are Procedurally Barred

The Appellate Division rejected petitioner's claims of a Confrontation Clause violation,[2] prosecutorial misconduct, and a *Rosario* violation because they were not preserved for appellate review. *See Stricklin*, 152 A.D.3d at 550–51. Accordingly, those claims are barred because the Appellate Division rejected them on an independent and adequate state law ground. "New York courts' application of their rules regarding the preservation of legal issues for appellate review in criminal cases—codified at N.Y. Crim. Proc. Law § 470.05[2]—constitute[s] independent and adequate state grounds" for a decision, barring relief under Section 2254. *McPherson v. Keyser*, No. 20-161-PR, 2021 WL 4452078, at *2 (2d Cir. Sept. 29, 2021), *cert. denied*, 142 S. Ct. 1235 (2022); *see Garvey v. Duncan*, 485 F.3d 709, 720 (2d Cir. 2007) ("[T]he procedural bar of § 470.05(2) constitutes an independent and adequate state ground for the Appellate Division's holding."). That is true even though the Appellate Division, in the alternative, rejected petitioner's

---

[2] Petitioner argued on appeal in state court that the admission of certain testimonial statements violated state hearsay rules in addition to the Confrontation Clause. *See* Pet. 54–57. The Appellate Division did not expressly address the hearsay argument as distinct from petitioner's Confrontation Clause claim. However, even assuming that the Appellate Division's determination regarding preservation did not extend to petitioner's hearsay claim, the Appellate Division effectively rejected the hearsay claim on the merits by holding that "the nontestifying witness's statements were not offered as evidence of the truth of the matter asserted therein." *Stricklin*, 152 A.D.3d at 550. That holding was not contrary to or an unreasonable application of clearly established federal law.

claims on the merits. *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (holding that a state court's finding that petitioner's "claims were not preserved for appellate review" under N.Y. Crim. Proc. Law § 470.05(2) "barred [the Court] from reaching the merits of his . . . federal claims . . . even where the state court has also ruled in the alternative on the merits of the federal claim[s]") (discussing *Harris v. Reed*, 489 U.S. 255 (1989)).

Petitioner's claim that he was deprived of his right to a preliminary hearing under N.Y. Crim. Proc. Law § 180.10 is also barred. In denying petitioner's motion to vacate, the state court held that his preliminary-hearing claim was procedurally barred because petitioner failed to raise it on direct appeal even though "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted . . . adequate review of the ground or issue raised." R. 1175 (quoting N.Y. Crim. Proc. Law § 440.10(2)(c)). Thus, even assuming *arguendo* that the claim presents a federal constitutional issue, the state court rejected the claim on an independent and adequate state ground. *See Brown v. Lee*, No. 10-CV-7605, 2011 WL 3837123, at *12 (S.D.N.Y. Aug. 30, 2011) ("The denial of a NYCPL § 440 motion pursuant to NYCPL § 440.10(2)(c) is an independent and adequate state ground that procedurally bars habeas review.").

## CONCLUSION

For the foregoing reasons, the petition is denied. And because petitioner has not shown "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further,'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)), a certificate of appealability under 28 U.S.C. § 2253(c)(2) is also denied. The Clerk of Court is directed to enter judgment and close the case. In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore

14

*in forma pauperis* status is denied for purposes of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

    SO ORDERED.

                                                                       */s/ Rachel Kovner*
                                                                       RACHEL P. KOVNER
                                                                       United States District Judge

Dated:     July 15, 2024
              Brooklyn, New York